**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ZEALOUS JONES MAYBERRY III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. H-03-5221 |
| | § | |
| MUNDY CONTRACT MAINTENANCE, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case in which the parties have filed cross-motions for summary judgment.  Having considered the parties' filings and arguments at the motion hearing, as well as relevant case law, the Court **GRANTS** Defendant Mundy Contract Maintenance, Inc.'s ("Mundy") Motion for Summary Judgment (Doc. # 53) and **DENIES** Plaintiff Zealous Mayberry's, III ("Mayberry") Motion for Summary Judgment (Doc. # 52).   All other pending motions  are **DENIED AS MOOT**.

**I.     BACKGROUND**

Mayberry is an African-American male, who was employed by Mundy from 1983 to December 2002, holding various positions at the BASF plant in Freeport, Texas.  Mundy is in the business of providing contract labor for various chemical plants in Texas and other states.  On December 5, 2002, Mayberry, who was then employed by Mundy as a Foreman/Supervisor, was terminated for violation of company rules, namely, for violation of "Intolerable Offense #8," which is "Falsification or refusing to give testimony when incidents or Company business shall be investigated."  An "intolerable offense" is one that does not automatically result in discharge as a matter of "standard procedure," but may result in discharge.

A.      The Underlying Events

The events which ultimately led to Mayberry's termination began on November 28, 2000. On that evening Mayberry met a non-supervisory African-American employee, William Jones ("Jones") on the BASF parking lot at about 10:00 p.m. as Jones finished his shift.  Mayberry had worked an earlier shift and had been off work for several hours.  According to Mayberry, he had returned to the BASF parking lot to meet Jones in order to give Jones an old high school picture of Mayberry's cousin, who also happened to be Jones' girlfriend.  Upon meeting Jones, Mayberry and Jones stood and talked next to Mayberry's car on the BASF parking lot.

A short time later another African-American co-worker, Roger Nichols ("Nichols"), walked across the parking lot, heading to his car to go home, when a Caucasian female security guard, Rhonda Gaines ("Gaines"), called for Nichols to stop.  Nichols claimed that he did not hear Gaines and continued to walk to his car.  As he prepared to drive out of the lot, Gaines stopped him and requested to search his vehicle.  When Gaines went back to the guard house to retrieve a flashlight to assist her in the search, she observed through the window what appeared to be something being handed from Nichols to Jones.  She completed the search of Nichols' vehicle without incident and he went on his way.  Gaines then requested to search Jones and he refused. Jones left the parking lot in his car.  Gaines reported to BASF security that Jones left the property after refusing to allow a search of his bag.  A Mundy Superintendent, John Bledsoe ("Bledsoe"), was notified to investigate the matter.  Bledsoe called Jones at his home and asked him to return to the plant.  Around midnight, Jones returned to the BASF plant and brought Mayberry to be a witness during his meeting with Bledsoe.  The head of BASF security explained at the meeting that the reason for an immediate investigation was that someone had recently been caught leaving

the plant with confidential blueprints.  At the meeting, Mayberry agreed with Jones' rendition of events — they had met in the BASF parking lot to exchange a photograph.  Following further discussion, the meeting was adjourned.  When Jones returned the next day, November 29, 2000, for his shift, he was fired for violating "Intolerable Offense #18," for "refus[ing] to allow inspection by [an] authorized representative of the Company or Owner of any packages of [sic] bundles while entering or leaving the Company's  . . . property."

Mundy conducted an investigation into the facts surrounding Jones' termination, including interviewing witnesses and taking their statements.  Mundy interviewed and took Mayberry's statement on November 29, 2000.  According to Mayberry, the written statement he gave to Bledsoe on November 29, 2000, was identical to the oral statement Mayberry made to Bledsoe the prior evening, November 28, 2000.

### B.    Jones' Litigation

Subsequently, on December 8, 2000, Jones filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") which, ultimately, was dismissed. Thereafter, Jones filed a lawsuit against Mundy alleging that he had been wrongfully terminated in that Mundy's search policy had been applied by Gaines in a discriminatory manner and Mundy had approved the discrimination in its termination of Jones' employment.   Mayberry was subpoenaed by Jones and gave a deposition in that lawsuit.  In his deposition in Jones' case, Mayberry testified that he had not met with Jones following his termination, except at a Mundy sponsored function.[1]  Mundy sought and was granted summary judgment in Jones' case.  *William Jones v. Mundy Contract Maintenance, Inc.*, H-01-2007 (S.D. Tex. July 9, 2003) (Rosenthal, J.).

-----

[1]  This was later shown to be false, as Mayberry admitted in his deposition that he had never attended any Mundy function during his employment with Mundy.

###### C.     Allegations of Mayberry's Misconduct

In November 2002, Mundy received information that led it to believe that Mayberry had falsified his testimony during Mundy's internal investigation of Jones' case in November 2000. Specifically, on November 10, 2002, a Mundy employee named Rhonda Simpson ("Simpson") advised Bledsoe that on November 28, 2000, she had been contacted by Jones at her home regarding his intent to offer "squares" in his football gambling pool to employees at the BASF plant following the end of his shift.  Jones informed Simpson that if she would come to the  plant that evening he would give her a square in the gambling pool.  Simpson declined his offer.  When Simpson heard the following day that Jones had been terminated for refusing a search, she concluded that the reason he had refused was to conceal his gambling pool information, as gambling is prohibited on the plant site.

According to Simpson, she spoke with Jones shortly after his termination and he confirmed that the reason he had refused the search was that he had the football pool documents and did not want to be caught on the plant site with them in his possession.  Simpson further stated that she was invited, within a few days of Jones' termination, to meet Jones at a bar, the Longbranch Club ("Longbranch"), near the BASF plant after work.  Simpson met Jones, Mayberry, and others at the Longbranch, at which time they reviewed Mundy documents reflecting security procedures and discussed Jones' intent to file a charge with the EEOC and a lawsuit against Mundy based on false testimony.  Simpson stated that Mayberry and Jones agreed that, in all further testimony, as in past statements, they would keep to the false statement that they had been on the BASF plant site the night of November 28, 2000, to look at an old photograph, rather than to operate a gambling pool.  According to Simpson, they agreed never to

admit that Jones had a gambling pool.  Simpson indicated that Jones offered to share the proceeds of his lawsuit in exchange for this testimony.

### D.    Mundy's Investigation

After receiving this information from Simpson, Mundy conducted an investigation to attempt to verify Simpson's statement, to obtain information regarding the extent of the fraud perpetrated in the Jones' matter, and to determine the participants in that fraud.  Numerous employees were questioned regarding the matter and these employees confirmed relevant portions of Simpson's statement, including the fact that a meeting was held at the Longbranch with Mayberry and Jones present.  Although these employees did not have information to validate the details of Jones' and Mayberry's discussion at the Longbranch reflected in Simpson's statement, or the agreement between Jones and Mayberry to continue to falsify testimony regarding the gambling pool, Mundy believed the other employees' comments lent credibility to Simpson's statement regarding the conversations at the Longbranch.  Thus, based on this information, Mundy believed that Mayberry provided false testimony on November 28 and 29, 2000, in Mundy's internal investigation of Jones' termination.   Mayberry's falsification and concealment of this information was in violation of Mundy policy, Intolerable Offense #8. Pursuant to this policy, "Falsification or refusing to give testimony when incidents or Company business shall be investigated" is considered an "intolerable offense," and any employee engaging in such conduct is subject to immediate termination.  Before making a decision to terminate Mayberry, however, Mundy again met with him on November 19, 2002, to give him the opportunity to tell his side of the story regarding the events surrounding Jones' termination and the informal meeting at the Longbranch.   Mayberry refused to answer any questions.

Consequently, on December 5, 2002, Mundy terminated Mayberry's employment, citing his having provided false testimony in Mundy's internal investigation of Jones' termination.

On November 13, 2003, Mayberry brought this lawsuit against Mundy, claiming race discrimination and retaliation in violation of  42 U.S.C. §§ 1981, 1983, 2000e-5, the Texas Commission on Human Rights Act ("TCHRA") article 5122k, as codified TEX. LAB. CODE § 21.055, and various amendments to the United States Constitution.  Mayberry also raises a state law  workers' compensation claim pursuant to TEX. LAB. CODE ANN. § 451.001, and a common law claim for fraudulent misrepresentation.

## II.    ANALYSIS

### A.    Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (citation and quotation omitted).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court views all evidence in the light most favorable to the non-moving party and draws all inferences in that party's favor.  *Id.*

"[A] complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for

Defendant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If Defendant shows that there is a lack of evidence to support Plaintiff's case, Plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Kee*, 247 F.3d at 210 (citation and quotation omitted).

### B.    Race Discrimination and Retaliation Claims

Mayberry alleges that he was terminated on the basis of his race in violation of 42 U.S.C. §§ 1981, 1983, 2000e-5, as well as TEX. LAB. CODE Ann. § 21.055.[2]  Title VII proscribes an employer from discharging or otherwise discriminating against an individual because of that individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003).  Section 1981 also prohibits race discrimination. Specifically, § 1981 provides that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *Felton v. Polles*, 315 F.3d 470, 479-80 (5th Cir. 2002).  These rights are "protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).   "As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race."  *Carroll v. General Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990).  The issue in a Title VII or § 1981 case is "whether the defendant intentionally discriminated against

---

[2]   Claims of employment discrimination brought under 42 U.S.C. §§ 1981, 1983, or 2000d and the TCHRA are analyzed under the same evidentiary standard as claims brought under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*  *See Monteverde v. New Orleans Fire Dep't*, 124 Fed. Appx. 900, 903 (5th Cir. Mar. 23, 2005); *Shackelford v. Deloitte & Touche*, 190 F.3d 398, 404 n.2 (5th Cir. 1991).  Thus, for the purposes of this Memorandum and Order, the Court will analyze Mayberry's Title VII, § 1981,  § 1983, and TCHRA claims simultaneously.

the plaintiff" on the basis of his or her race.  *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (citation and quotation omitted).

Discrimination under Title VII or § 1981 can be established through either direct or circumstantial evidence.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)).  Because Mayberry presents no direct evidence of discrimination, his claim must be analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Wallace*, 271 F.3d at 219.  Under this framework, Mayberry must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.  133, 142 (2000); *Laxton*, 333 F.3d at 578**.**

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Laxton*, 333 F.3d at 578.  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

If the employer sustains its burden, the *prima facie* case disappears, and the burden shifts back to the plaintiff to establish either:  (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th

Cir. 2004).  If the plaintiff "demonstrates that [his protected characteristic] was a motivating factor in the [employer's decision to terminate him**], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Id*. (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1219 (5th Cir. 1995)).

The ultimate burden of persuasion that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff.  *Reeves*, 530 U.S. at 143; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).  As such, courts may consider a number of factors in deciding whether summary judgment is appropriate, including "the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."  *Reeves*, at 148-49.  Summary judgment may be particularly appropriate where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred" or where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision."  *Id*. at 148.

### 1.    Intentional Discrimination and Disparate Treatment

Because Mayberry's disparate treatment termination claim involves the violation of a work rule, to establish a *prima facie* case, Mayberry must show:  (1) membership in a protected group; (2) qualification for the position held; (3) termination; and (4) either, that he did not violate the work rule, or that, if he did, similarly situated white employees who engaged in the same conduct were not punished similarly.  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980); *see also*

*Solorzano v. Shell Chem. Co.*, 254 F.3d 1082 (5th Cir. 2001).  Furthermore, to demonstrate that white employees were not similarly disciplined, the plaintiff must show that white employees were treated differently under circumstances "nearly identical" to his.  *Mayberry*, 55 F.3d at 1090 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Mayberry does not present or identify summary judgment evidence of any similarly situated employees outside the protected class who violated the same work rule at Mundy but received a lesser punishment.  Instead, Mayberry asserts that he did not violate the work rule, claiming that Simpson's statement lacks veracity.  Mayberry has raised a material issue of fact as to whether he actually violated Mundy's work rule—providing false statements during Jones' matter.  As such, he has established a *prima facie* case of discriminatory discharge.

Mundy offers a legitimate, nondiscriminatory reason for its actions—Mundy *believed* Mayberry violated company policy by giving false statements during the investigation of Jones' termination.  As set forth, *supra*, in November 2000, Mayberry affirmed Jones' statement to Mundy that he was on the plant site after his shift for the purpose of obtaining a photograph, and that a photograph represented the contents of the envelope in his possession.  In November 2002, Mundy received information from Simpson that Mayberry and Jones had met at the BASF parking lot in November 2000 for the purpose of engaging in the operation of a gambling pool, and that gambling pool documents were actually in Jones' envelope.  Simpson further advised Mundy that a few days after Jones' termination, she met with Mayberry, Jones, and others at the Longbranch, at which time they reviewed Mundy documents reflecting security procedures and discussed Jones' intent to file a charge with the EEOC and a lawsuit against Mundy based on false testimony.  Mundy questioned other employees, who confirmed relevant portions of

10

Simpson's statement regarding the meeting at the Longbranch.  Because the other employees' comments provided credibility to Simpson's statements, Mundy believed Simpson's statement. On this basis, Mundy determined that Mayberry's testimony and statements regarding the facts surrounding Jones' termination were intentionally falsified and that he had engaged in conspiratorial conduct to defraud Mundy.

Discharging an employee for violating company policy is a legitimate, nondiscriminatory reason for an employer's adverse employment action.  *See Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).  Accordingly, pursuant to the burden-shifting framework outlined in *McDonnell Douglas Corp.*, the presumption of discrimination created by Mayberry's *prima facie* case has disappeared and Mayberry must produce some evidence demonstrating that Mundy's reason is pretext for race discrimination.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

In an attempt to show pretext, Mayberry contends that Mundy erred in relying on Simpson's statement, which directly implicated Mayberry as having lied during the investigation of Jones' termination.  Whether Simpson's statement was later shown to be of questionable veracity is of no consequence.  This alleged error in relying on Simpson's statement is insufficient, by itself, to establish that Mundy's proffered justification is pretext.  Indeed, even where an employer incorrectly believes an employee has violated work policy and acts on that good faith belief, it does not constitute discrimination under Title VII.  *Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); *Little*, 924 F.2d at 97 ("We do not try in court the validity of good faith beliefs as to an employee's competence.  Motive is the issue."); *De Anda v.*

11

*St. Joseph's Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982) ("Whether [Defendant] was wrong in its determination . . . is irrelevant, as long as its belief, though erroneous, was the basis for the termination.").   Moreover, "[i]t is not sufficient [for the plaintiff] to present evidence that the . . . investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion.  [He] must show that the reason proffered by [the defendant] is false, and discrimination was the real reason." *Pineda v. United Parcel Service*, 360 F.3d F.3d 483, 489 (5th Cri. 2004) (internal citations omitted).  This Mayberry has failed to do.

Similarly, although Mayberry attempts to disprove the assertions made in Simpson's statement by attacking Simpson's credibility, he fails to proffer any evidence to rebut Mundy's declaration that, at the time of Mayberry's termination, it had a good faith belief that Mayberry violated its work rule by providing false and misleading testimony in the course of its investigation of Jones' termination.   "That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong."  *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989), *cert. denied*, 495 U.S. 935 (1990); *see also Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'").

Like the plaintiff in *Mayberry v. Vought*, here, Mayberry does little more to point to evidence of pretext than reassert his arguments made toward his *prima facie* case.   Moreover, although irrelevant, Mayberry proffers little to no evidence that Mundy conducted a flawed investigation.   In sum, even assuming Mayberry established a *prima facie* case, he has not

overcome the pretextual burden.   Thus, Mayberry's claims for race discrimination must be dismissed.

### 2.        Disparate Impact

To the extent that Mayberry attempts to raise a claim of disparate impact, this claim also fails as a matter of law.  Mayberry must specifically identify the policy or practice that has had a disproportionately negative impact on the protected class.   42 U.S.C. § 2000e-2(k)(1)(A). Mayberry does not identify a specific employment practice that disparately impacted the protected class.  Rather, he conclusorily alleges that "the actions of Defendants had a disparate impact on Blacks and Hispanics at the Mundy plant, Freeport site."   Mayberry fails to identify or present evidence on the degree of disparity between the workers in and out of the protected class.  The "burden is on the plaintiff to conduct a systematic analysis of those employment practices." *Caswell v. Federal Exp. Corp.*, No. Civ.A. 3:00-CV-1757, 2002 WL 31927116, at *10 (N.D. Tex. Dec. 31, 2002).  Because Mayberry has failed to present competent summary judgment evidence that Mundy had a policy or other employment practice that disproportionately impacted Black or Hispanic employees, Mayberry's disparate impact claim must be dismissed.

### 3.        Retaliation

Plaintiff next argues that Mundy unlawfully retaliated against him.  To establish a *prima facie* case of retaliation under Title VII or § 1981, a plaintiff must show:  (1) he engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action.[3]  *Davis*, 383

---

[3]  "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

F.3d at 319.  An employee has engaged in activity protected by Title VII if he has either opposed any practice made an unlawful employment practice by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).

The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context—"the familiar *McDonnell Douglas* burden-shifting framework applies." *Id.*; *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).  Retaliation claims based on § 1981 are also considered under the Title VII rubric of analysis.  *See Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 469 (5th Cir. 2002).  "[R]etaliation claims under § 1981 and Title VII  . . . are parallel causes of action.  Each requires proof of the same elements in order to establish liability."  *Foley v. University of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003).  Thus, after Plaintiff sets forth a *prima facie* case of retaliation, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its actions.  *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  If the employer meets its burden, the employee then bears the ultimate burden of demonstrating that the reasons given by the employer are a pretext for retaliation.  *Id*.  To satisfy his burden, Plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *Mota*, 267 F.3d at 354.

In an attempt to establish his *prima facie* case, Mayberry maintains that it was his participation in the Jones matter and opposition to racially discriminatory practices, and not his work rule violations, that motivated Mundy to terminate his employment.  This argument is not persuasive, as there was a long time lapse between Mayberry's involvement in the investigation

14

of Jones' termination and Mayberry's own termination from employment.  Indeed, Mayberry

gave statements during Mundy's investigation in Jones' termination on November 28 and 29,

2000 and Mayberry's deposition was taken in Jones' case in February 2002.   Mayberry's

employment was terminated on December 5, 2002.   The time between Mayberry's alleged

protected activities and his termination is too attenuated to prove a causal connection.  *See Clark*

*County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal

proximity between an employer's knowledge of protected activity and an adverse employment

action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the

temporal proximity must be 'very close.'"); *see Raggs*, 278 F.3d at 471-72 (holding that

plaintiff's evidence that adverse employment action occurred five months after protected activity

was insufficient by itself to support *prima facie* causal link); *Swanson v. General Servs. Admin.*,

110 F.3d 1180, 1188 & n.3 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997) ("Close timing between

an employee's protected activity and an adverse action against him may provide the 'causal

connection' required to make out a *prima facie* case of retaliation.").

     With regard to Mayberry's contention that he was terminated days after he submitted an e-

mail[4] to Mundy's Human Resource Manager, Andy Beard ("Beard"), on November 25, 2002,

allegedly providing an attachment[5] opposing racial discrimination, Mayberry fails to support this

contention with competent summary judgment evidence.  In fact, the summary judgment evidence

set forth by Mundy (*i.e.*, Beard's affidavit and a computer print out of the document properties for

the attachment) demonstrates that Mayberry's e-mail did not mention discrimination of any type

---

    [4]   The contents of the e-mail Mayberry sent to Beard on November 25, 2002, was as follows:  "I would like to
know if you have the time to have a meeting with me, sometime this week, if you can.  There are a few things that I
would like to talk about."  No attachment was provided in conjunction with the e-mail.

    [5]   In the attachment, the only mention of anything that remotely could be considered unlawful activity is a
reference to "racial tension that [was] being swept under the rug when question (sic)."  The remainder of the
attachment refers to general work place issues.

and did not contain an attachment.  Instead, the attachment referenced by Mayberry was actually generated on February 19, 2001, and sent to Mundy at that time.[6]  Thus, contrary to Mayberry's assertion, he has failed to demonstrate a causal connection between the attachment referencing "racial tension," which was sent in February 2001, and his termination which occurred 22 months later, in December 2002.

Moreover, even if the 22-month time gap was sufficient to infer a relationship, the fact remains that the document itself does not represent a complaint that would constitute protected activity.  It vaguely references "racial tension,"  which cannot be construed as a specific complaint to any unlawful conduct.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); *see also Volberg v. Pataki*, 917 F. Supp. 909, 916 (N.D.N.Y.) (memorandum to state officials did not constitute protected activity), *aff'd*, 112 F.3d 507 (2d Cir.1996), *cert. denied*, 520 U.S. 1119 (1997).

Notwithstanding, because of Mayberry's falsification of testimony during the Jones matter and refusal to participate in the investigation of the same, both of which violated Mundy policy, Mayberry would have been fired whether or not he had lodged an internal race discrimination claim.  *See  Swanson*, 110 F.3d at 1188 n.3 ("the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case. . . .  Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements.") (emphasis in original);  *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4

---

[6] According to his affidavit, Beard received the attachment from Mayberry in February 2001, following an on-site visit to the BASF plant.  At that time, Beard requested that Mayberry provide written documentation of his concerns expressed during the visit and provide suggestions for what could be done to improve the situation.  Mayberry sent the document to Beard in response to that request in February 2001.  Beard's affidavit is corroborated by the computer print out of the document properties for the attachment, which reveal it was created February 19, 2001.

(5th Cir. 1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

In sum, beyond Mayberry's conclusory allegations, the record reflects no competent summary judgment evidence to support a relationship between Mayberry's protected activity and his termination.  *See Gregory v. Texas Youth Comm'n*, 111 Fed. Appx. 719, 721, 2004 WL 2244241, at *2 (5th Cir. Sept. 28, 2004) (noting that unsubstantiated allegations do not rise to the level of evidence tending to support a causal connection).  Without such a causal connection, Mayberry's *prima facie* case fails and makes summary judgment appropriate on his retaliation claims.

Even assuming that Mayberry could show a causal connection between his protected conduct and Mundy's adverse employment action, he fails, for summary judgment purposes, to overcome Mundy's legitimate nonretaliatory reason for its decision to terminate his employment. Mundy claims that Mayberry was fired for violating company policies.  Mundy's legitimate reason for terminating Mayberry eliminates any presumption that the termination was discriminatory.  *See Davis*, 383 F.3d at 317. As set forth above, Mundy determined that Mayberry had violated company policy by making false statements during the investigation of Jones' termination; hence, Mundy terminated Mayberry's employment.  Under the terms of Mundy's company policy, an employee found to have falsely testified in an internal investigation is subject to being terminated.

Mayberry attempts to show that Mundy's stated basis for his dismissal—the false statements in the course of Mundy's internal investigation—are pretextual, by raising doubt as to

17

the genuineness of Simpson's statement given her negative history with Jones.  Mayberry has presented no competent summary judgment evidence, besides his own conjectures, beliefs and speculation that would establish that Mundy's reason for terminating him was pretextual.  A plaintiff's own subjective beliefs of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996).

### C.      Additional Claims

#### 1.      TEX. LAB. CODE ANN. § 451.001

Mayberry claims that he was fired on the basis of his medical/mental health condition.  According to Mayberry, in September 2002, a plant explosion occurred at the BASF site.  Mundy alleges that he was affected by the explosion and went to see a plant psychologist, who allegedly advised him to file a workers' compensation claim.  Mayberry contends that Mundy was aware he was seeing the BASF psychologist.

Section 451.001 of the Texas Labor Code creates a statutory exception to the Texas common law, employment-at-will doctrine.  *See Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995); *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996).  The statute prohibits an employer from discharging or discriminating against an employee because the employee has filed or pursued a workers' compensation claim in good faith.  *See* TEX. LAB. CODE ANN. § 451.001; *Klumpe v. IBP, Inc.*, 309 F.3d 279, 282 n.6 (5th Cir. 2002); *Cazarez*, 937 S.W.2d at 453.  In order to establish a *prima facie* case under the Texas Labor Code, the plaintiff must demonstrate that:   (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in

the protected activity and the adverse employment action.  *West v. Maintenance Tool & Supply Co.*, 89 S.W.3d 96, 105 (Tex. App.—Corpus Christi 2002, no pet.).

Here, Mayberry has failed to establish a *prima facie* case.  Mayberry acknowledges that, at the time of his termination, he had not filed a claim for workers' compensation.  Moreover, there is no evidence that Mayberry ever informed Mundy of any intent to file a workers' compensation claim.  In any event, Mundy has articulated its legitimate, non-retaliatory reason for Mayberry's discharge.  Because Mayberry has not adduced any evidence of a causal link between participation in a protected activity and his discharge, Mayberry's workers' compensation discrimination claim must fail.

### 2.    Fraudulent Misrepresentation

Mayberry claims that Mundy promised him job security if he would conceal facts and information pertinent to Jones' case.  In Texas, the elements of fraudulent representation, the particular species of fraud advanced by Mayberry, are as follows:  (1)  the defendant made a material representation concerning an existing fact; (2) the representation was false when it was made; (3) the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made the misrepresentation with the intent that it should be acted upon; (5) the plaintiff acted with justifiable reliance on the misrepresentation; and (6) the plaintiff suffered injury as a result.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002);  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Here, Mayberry concedes that he has not presented evidence of fraudulent misrepresentation, but claims that it was due to the failure to complete discovery and that a Rule

19

56(f) continuance is necessary.  Rule 56(f) authorizes a court to grant a continuance when the nonmovant has not had an opportunity to conduct discovery that is essential to his opposition to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). "Rule 56(f) motions are generally favored and should be liberally granted." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).  To comply with the Rule, the nonmovant must show (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact.  *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999).  Although the burden is not a heavy one, the nonmovant must justify his entitlement to a continuance by presenting specific facts explaining his inability to make a substantive response. *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 137 (5th Cir. 1987).  A party may not rely on vague assertions that additional discovery will produce needed, but unspecified facts.  *Id*. at 137.  Instead, a party must identify a genuine issue of material fact that justifies the continuance pending further discovery.  *See Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400, 1415 (5th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988).  Finally, in conjunction with a nonmovant's request for additional discovery, the nonmovant must establish that he has diligently pursued relevant discovery.  *See Beattie*, 254 F.3d at 606.

Thus, as the party seeking a continuance, Mayberry had the burden of (1) identifying precisely what discovery was sought; (2) explaining how the additional discovery would help him meet his burden in opposing summary judgment; and (3) demonstrating that he had diligently pursued discovery.  Mayberry has failed to meet any of these requirements.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir.1994). While Rule 56(f) motions are generally favored and liberally granted, the court "need not aid non-

20

movants who have occasioned their own predicament through sloth." *Witchita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992), *cert. denied*, 508 U.S. 910 (1993). Because Mayberry has failed to offer any evidence to support this fraudulent misrepresentation claim, summary judgment is warranted.

### 3.    Constitutional Claims

Mayberry's Amended Original Petition references several Constitutional amendments as a basis for this action, including the First, Fifth and Fourteenth Amendments to the United States Constitution.   Mayberry's constitutional claims are specious.   Mayberry offers no elaboration upon or defense of the constitutional claims he purports to assert or explain how the aforementioned amendments are implicated in this suit.   As such, Mundy is entitled to judgment as a matter of law on Mayberry's constitutional claims.

## III.    CONCLUSION

For the foregoing reasons, Mundy's Motion for Summary Judgment (Doc. # 53) is **GRANTED** and Mayberry's Motion for Summary Judgment (Doc. # 52) is **DENIED**.   All of Mayberry's claims are **DISMISSED WITH PREJUDICE**.   All other pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 16th day of August, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A
COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY
HAVE BEEN SENT ONE BY THE COURT

21